IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILLIAM JAMES SISKOS,

      Plaintiff,

v.                           CASE NO. 4:17-cv-186-RH-GRJ

SECRETARY, DEP'T OF
CORRECTIONS,

      Defendant.

_____/

## REPORT & RECOMMENDATION

This matter is before the Court on ECF Nos. 24 & 26, Plaintiff's

Motions for Preliminary Injunction, and ECF No. 27, Defendant's Motion to

Dismiss. The parties have filed their respective responses to the motions.

(ECF Nos. 32, 41.) The motions are otherwise ripe for review.

For the reasons explained below, it is respectfully recommended that

Plaintiff's motions for preliminary injunction should be denied and

Defendant's motion to dismiss should be granted.

## I. INTRODUCTION

### A. Background

Plaintiff, an inmate in the custody of the Florida Department of

Corrections ("FDOC") initiated this case by filing a *pro se* complaint under

42 U.S.C. § 1983. (ECF No. 1.)  He subsequently filed a second amended

complaint on October 25, 2017, which is presently the operative complaint

in this matter. (ECF No. 17.)

Plaintiff then filed the two pending motions for preliminary injunctive

relief. (ECF Nos. 24, 26.) Defendant Secretary of the Department of

Corrections' ("Secretary") pending motion to dismiss followed. (ECF No.

27.)  Thereafter, Plaintiff filed his response to the motion to dismiss, and

the Secretary then filed her response to the motions for preliminary

injunctive relief. (ECF Nos. 32, 41.)

## B.  Allegations

Plaintiff is a former FDOC correctional officer who, while he was

employed as a correctional officer, suffered an attack from an inmate with

a cinder block. The attack, he says, resulted in a traumatic brain injury

("TBI"), which caused severe post-traumatic stress disorder, anxiety, panic

attacks, and hallucinations ("mental health issues"). At some point

thereafter, Plaintiff was convicted of murder and sentenced to life

imprisonment in the FDOC.

Plaintiff's claims against the Secretary arise from his mental health

issues.  According to Plaintiff, the prison environment constantly invokes his mental health issues and causes flashbacks related to his former employment as a correctional officer. Plaintiff says this poses a serious risk of harm to him because a flashback leaves him "virtually defenseless and blind to actual attack," and if he were attacked, he would perceive an attack imprinted in his mind, not the actual attack. (ECF No. 17 at 6.) Plaintiff alleges that adequate mental health treatment can only be provided in the "therapeutic environment" of a hospital-like residential treatment facility. (*Id.* at 8.)

Plaintiff is prescribed Celexa for his mental health issues. He alleges that he was denied this medication for sixty-eight days from March 1, 2017, though May 9, 2017, which he says endangered his life. On April 5, 2017, Plaintiff declared a psychological emergency during which he presented to officers and informed them of his mental health issues and that he had been without his medication for—at that point—thirty days. At some point thereafter, Plaintiff received a disciplinary report and was placed in lock down without treatment from a health care provider. Plaintiff has since filed various grievances pertaining to his mental health issues and his request to be transferred to a hospital-like residential treatment facility, which have

been denied. Plaintiff says that his grievances put the Secretary on notice of the constitutional violations.

Plaintiff further claims that he has been denied meaningful access to services, programs, and activities in prison due to his mental health issues. Plaintiff alleges his mental health issues stemming from his TBI substantially limit his ability to perceive and accurately interpret the world around him, communicate, concentrate, and respond appropriately to the prison environment. Plaintiff contends that the Secretary refused to properly train her employees on the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and how to provide adequate medical and mental health services to prisoners with mental health issues. Plaintiff also raises various complaints pertaining to the Secretary's response to Plaintiff's prior petition for writ of habeas corpus under 28 U.S.C. § 2254, which Plaintiff says demonstrates that the Secretary maintains a custom or policy of discriminating against inmates with mental health issues.

Plaintiff brings claims against the Secretary for (1) deliberate indifference to his serious medical needs by placing him on lock down with other inmates, denying his requests to be transferred to a hospital-like residential treatment facility, and failing to provide him with proper

medication in violation of the Eighth Amendment, and (2) failing to provide

him with a reasonable accommodation for his mental health issues by

transferring him to a hospital-like residential treatment facility, in violation of

the ADA. Plaintiff seeks injunctive relief ordering that he be transferred to a

hospital-like residential treatment facility, as well as ten million dollars in

monetary damages.

## II.  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 24)

Plaintiff seeks preliminary injunctive relief "based on new evidence of

continuing civil rights violations and substantial threat of further irreparable

injury." (ECF No. 24 at 1.)  He says that on November 2, 2017—after he

filed his Complaint—another inmate at Wakulla Correctional Institution

(where Plaintiff is incarcerated) recognized Plaintiff as a former FDOC

correctional officer. Plaintiff suffered a severe panic attack because being

recognized as a former correctional officer places him at a high risk of

rape, injury, or death by other inmates. Plaintiff declared a psychological

emergency and requested placement in protective custody. Captain

Washington, however, refused to place Plaintiff in protective custody and

denied Plaintiff mental health services. Captain Washington then

threatened to lock Plaintiff up and place him in a cell with a "punitive

segregated inmate in lock down." (*Id.* at 3.)

Six days later, Plaintiff filed a formal grievance about being denied protective custody and Captain Washington's treatment. The next day Plaintiff filed a request for emergency investigation explaining his mental health issues and how they relate to protective custody. Plaintiff was thereafter called to the security office to fill out a statement regarding his mental health issues and how they relate to confinement. He was told he would be housed alone in a confinement cell for up to a week pending review.

Instead, Plaintiff says he was then placed in a cell with a registered gang member. Plaintiff says that someone could have ordered a hit on him while he was housed with the gang member. There is no allegation that the gang member assaulted, attacked or harmed Plaintiff.

Eventually, the gang member was transported to another facility. Instead of being allowed to remain in the cell alone, Plaintiff was transferred to a different cell with a convicted rapist who, Plaintiff claims, sodomizes other men. That cell had blood and fecal stains on the walls. Plaintiff says he faced risk of disease, injury, rape, and death while being confined in that cell.  Again the complaint is devoid of any allegation that

the convicted rapist did anything to Plaintiff.

Plaintiff claims that although he requested emergency mental health services since his first day in confinement, he was not allowed an appointment with a competent psychiatric doctor and instead simply was treated by a counselor. He eventually wrote a request to security explaining that he was denied sick call and his emergency request for mental health services. The response directed him to file a request with medical if he was having medical issues.

Plaintiff then filed the instant motion for preliminary injunction. Liberally construed, Plaintiff seeks a preliminary injunction ordering the Secretary to place Plaintiff into protective custody, transfer Plaintiff to a hospital-like residential treatment facility, provide unbiased psychological and medical evaluations by a competent psychologist and medical doctor, and provide all of Plaintiff's medical and psychological records to this Court to be preserved as evidence, as well as court-appointed counsel to ensure he has adequate accommodations to communicate with the Court due to his disability.

Granting or denying a preliminary injunction is a decision within the discretion of the district court. *Carillon Imps., Ltd. v. Frank Pesce Intern.*

*Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (citing *United States v.*

*Lambert*, 695 F.2d 536, 539 (11th Cir. 1983)). Guiding this discretion is the

required finding that plaintiff establish: (1) a substantial likelihood of

success on the merits; (2) a substantial threat of irreparable injury if the

injunction were not granted; (3) that the threatened injury to the plaintiffs

outweighs the harm an injunction may cause the defendant; and (4) that

granting the injunction would not disserve the public interest. *Siegel v.*

*LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Carillon Imps.*, 112 F.3d at

1126; *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir.

1983). A preliminary injunction is an extraordinary and drastic remedy and

should not be granted unless the movant "clearly carries the burden of

persuasion" of all four prerequisites, which is always upon the plaintiff.

*Jefferson Cty.*, 720 F.2d at 1519 (citing *Canal Auth. v. Callaway*, 489 F.2d

567 (5th Cir. 1974)).

Plaintiff has not met his burden of persuasion because he has not

and cannot demonstrate a substantial likelihood of success on the merits.

Plaintiff's motion for preliminary injunctive relief is based entirely upon

incidents, events and claims that occurred *after* Plaintiff filed his Complaint.

Plaintiff cannot pursue injunctive relief based upon events and claims that

were not plead in his complaint.

Plaintiff argues that there is a substantial likelihood of success on the merits because this court "concluded that the allegations of Plaintiff's complaint [were] sufficient to alert Defendant to the nature and factual basis of Plaintiff's claims" and thus directed the United States Marshal to serve the complaint and summons upon the Secretary. (ECF No. 24 at 8.) Merely because the Court determined his allegations were sufficient to alert Defendant to the nature and factual basis of his claims does not mean that the Court concluded Plaintiff had a substantial likelihood of success on the merits.  The Court simply determined based upon a liberal reading of the complaint that Defendant was required to respond to the complaint. It does not mean that Plaintiff has or will be able to prove the claims in his complaint.  But apart from whether Plaintiff will be able to prove the claims in his complaint, the events and claims alleged in Plaintiff's motion for preliminary injunctive relief were not addressed in his complaint.

In addition to these shortcomings, the injunctive relief Plaintiff now seeks in his motion for preliminary injunctive relief was not sought in his complaint. These claims (which were not included in Plaintiff's complaint) include Plaintiff's request in his motion for preliminary injunctive relief for placement in protective custody, provision of unbiased psychological and

medical evaluations by a competent psychologist and medical doctor, an order directing Defendant to provide the Court with Plaintiff's medical and psychological records for the Court to preserve as evidence, and court-appointed counsel.  While several of these requests are not appropriate requests for preliminary injunctive relief, even if they were, Plaintiff cannot seek injunctive relief for claims not included in his Complaint.[1]

And with regard to Plaintiff's request to be placed in protective custody, even if Plaintiff had requested this in his complaint, the request is due to be denied as moot because the Secretary has submitted evidence demonstrating that Plaintiff's request for protective custody was approved on April 3, 2018, that Plaintiff was placed in protective custody on April 9, 2018, and that Plaintiff remains in protective custody to date. (ECF Nos. 41-1, 41-2.).

The only injunctive relief that Plaintiff requests in his Complaint is transfer to a hospital-like residential treatment facility. The Court lacks authority, however, to direct the FDOC to release an inmate from prison and place him in a residential treatment facility to serve the remainder of

---

[1] To the extent Plaintiff's request for a preliminary injunction ordering court-appointed counsel is liberally construed as a motion for appointment of counsel, Plaintiff's request is denied for the same reasons set forth in the Court's orders dated September 18, 2017, March 19, 2018, and April 19, 2018. (ECF Nos. 16, 35, 40.)

his life sentence.

Alternatively, to the extent Plaintiff's request is liberally construed as a request for transfer to the Florida State Hospital or a similar facility, the FDOC cannot simply send inmates with mental health issues to the Florida State Hospital.  Instead, the Florida State Hospital and similar facilities evaluate and treat defendants in criminal proceedings who have been adjudicated either incompetent to proceed or who have been found not guilty by reason of insanity. Plaintiff does not fall within either of those categories. Plaintiff was convicted and sentenced to life imprisonment in the FDOC. The Court therefore lacks authority to order the FDOC to transfer him to a hospital-like residential treatment facility to serve the remainder of his life sentence. Plaintiff's motion for preliminary injunctive relief should be denied.

Plaintiff also includes in his motion for preliminary injunctive relief a statement that he "need[s] to amend [his] claim." (ECF No. 24 at 7.) Plaintiff argues that the denial of protective custody on November 2, 2017, and the continued denial of mental health services "is relevant new evidence in support of his civil rights claim," "implicates [a] failure to protect," and "is relevant evidence of [a] pattern of abuse, discrimination, [and] ill will toward [his] disability . . . ." (*Id.*) To the extent the Court liberally

construes this as a request to file an amended complaint, Plaintiff's request is due to be denied.

Plaintiff has not filed a motion for leave to amend his complaint under Fed. R. Civ. P. 15(a)(2). Nor has he filed a copy of his proposed amended complaint pursuant to N.D. Fla. Loc. R. 15.1. It is improper for a plaintiff to weave a request for leave to amend his complaint in a motion for preliminary injunctive relief—or any other motion not solely seeking leave to file an amended complaint. *See, e.g.*, *Magluta v. United States*, No. 10-21325-CIV, 2012 WL 488078, at *3 (S.D. Fla. Feb. 14, 2012) (denying leave to amend where plaintiff wove the request into his reply memorandum and did not file a separate motion for leave to amend). To the extent Plaintiff wants the Court to grant him leave to file an amended complaint he must do so by filing a separate motion for leave to amend and contemporaneously attach a copy of his proposed amended complaint so that the Court will have the benefit of reviewing his proposed amended complaint to determine whether the amended complaint alleges further causes of action upon which relief may be granted. Plaintiff is reminded, however, that a prisoner must first exhaust administrative remedies on any claims prior to filing those claims in federal court.

### III.  PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION (ECF NO. 26)

Plaintiff's second motion for preliminary injunctive relief, ECF No. 26, is identical to his first motion for preliminary injunctive relief, ECF No. 24, except his second motion is missing one page of the attached exhibits. Therefore, for the same reasons discussed above supporting denial of Plaintiff's first motion for preliminary injunctive relief, Plaintiff's second motion for preliminary injunctive relief, ECF No. 24, is due to be denied.

### IV.  DEFENDANT'S MOTION TO DISMISS (ECF NO. 27)

The Secretary argues that Plaintiff's Complaint should be dismissed for five reasons: (1) Plaintiff fails to state a claim under the ADA; (2) Plaintiff fails to state a claim under the Eighth Amendment; (3) Plaintiff's claims for damages against the Secretary in her official capacity are barred by the Eleventh Amendment; (4) Plaintiff's claims for damages are barred by the Prison Litigation Reform Act ("PLRA"); and (5) Plaintiff's claim for emergency injunctive relief is due to be dismissed. (ECF No. 27.)

### A.  Standard of Review

To state a claim for relief under § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution

or laws of the United States. *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). As the Supreme Court held in *Bell Atl. Corp. v. Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." 550 U.S. 544, 555 (2007)

    *Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true . . . ." *Ashcroft v. Iqbal*, 556 U.S. 662, 1951–53 (2009). To escape dismissal, the complaint must allege facts sufficient to move claims "across the line from conceivable to plausible." *Id.* "The plausibility standard is met only where the facts alleged enable 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' . . . . The complaint's allegations must establish 'more than a sheer possibility that a defendant has acted unlawfully.'" *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

    Nevertheless, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[A] *pro se* complaint, however inartfully pleaded,

must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Id.* (quoting *Estelle*, 429 U.S. at 106).

## B. Discussion

### 1.   ADA Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Federal regulations implementing Title II require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program or activity." 28 C.F.R. § 35.130(b)(7)(I); *see Alexander v. Choate*, 469 U.S. 287, 300–01 (1985) (refusing to make reasonable accommodations, including making changes to applicable rules or policies when necessary, is tantamount to denying access to a covered program or service). It is well settled that Title II of the ADA applies to inmates in state prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209, 213 (1998).

"In order to state a Title II claim, a plaintiff generally must prove (1)

that he is a qualified individual with a disability; (2) that he was either

excluded from participation in or denied the benefits of a public entity's

services, programs, or activities, or was otherwise discriminated against by

the public entity; and (3) that the exclusion, denial of benefit, or

discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-*

*Dade Cty.*, 480 F.3d 1072, 1083 (11th Cir. 2007). In the Eleventh Circuit,

"the final clause of § 13132 'protects qualified individuals with a disability

from being 'subjected to discrimination by any such entity,' and is not tied

directly to the 'services, programs, or activities' of the public entity.'" *Id.* at

1085 (quoting *Bledsoe v. Palm Beach Cty. Soil & Water Conservation*

*Dist.*, 133 F.3d 816, 821–22 (11th Cir. 1998)). The final clause "is a catch-

all phrase that prohibits all discrimination by a public entity, regardless of

the context." *Id.* (quoting *Bledsoe*, 133 F.3d at 822) (internal quotations

omitted); *see Lonergan v. Fla. Dep't of Corr.*, 623 F. App'x 990, 992 (11th

Cir. 2015) ("An ADA claim may proceed on the theory that the Defendant

failed to reasonably accommodate the Plaintiff's disability."); *Wolfe v. Fla.*

*Dep't of Corr.*, No. 5:10–CV–663–Oc–PRL, 2012 WL 4052334, at *4 (M.D.

Fla. Sept. 14, 2012) ("Under the ADA, a plaintiff may establish

discrimination by showing that the public entity refused to provide a

reasonable accommodation for a disabled person."); *see also Kiman v.*

*New Hampshire Dep't of Corr.*, 451 F.3d 274, 286–87 (1st Cir. 2006)

(holding that providing prescription medications—as one part of a prison's

overall medical services—constitutes a service, program, or activity under

the ADA); *Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998)

(determining that "services, programs, and activities include all government

activities").

> The ADA defines a "qualified individual with a disability" as,
>
> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). For purposes of the ADA, a disability is: "(A) a

physical or mental impairment that substantially limits one or more of the

major life activities of [an] individual; (B) a record of such an impairment; or

(C) being regarded as having such an impairment . . . ." 42 U.S.C. §

12102(1). Major life activities include, but are not limited to, seeing,

hearing, concentrating, and thinking. § 12102(2)(A).

"A physical [or mental] impairment, standing alone . . . is not

necessarily a disability as contemplated by the ADA." *Gordon v. E.L.*

*Hamm & Assoc., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996). Instead, to

determine whether an impairment substantially limits a major life activity courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.*

Assuming, for purposes of the motion to dismiss, that Plaintiff is a qualified individual with a disability under the ADA due to his mental health issues, Plaintiff nonetheless fails to state a plausible claim under the ADA.

As a threshold issue, Plaintiff cannot bring a Title II ADA claim against the Secretary in her *individual* capacity. *See Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 478 (11th Cir. 2015) ("Since only public entities may be liable under the ADA, [plaintiff] fails to state ADA claims against [prison officials] in their individual capacities."). Instead, any ADA claim against the Secretary in her official capacity would, in essence, be a claim against the FDOC. *See id.* Plaintiff, however, has not named the FDOC as a defendant in this case.

Even assuming Plaintiff had named the FDOC as a defendant, Plaintiff's allegations do not plausibly suggest that Plaintiff was "either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by

the public entity," and "that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll*, 480 F.3d at 1083.

Plaintiff alleges in a conclusory manner that he has been denied meaningful access to services, programs, and activities in prison due to his mental health issues. He then goes on to claim that the "reasonable accommodation" he was denied was a transfer to a hospital-like residential treatment facility for proper mental health treatment. Plaintiff's claim can be appropriately characterized as a reasonable accommodation claim. While a failure to reasonably accommodate Plaintiff's alleged disability could constitute discrimination under the final clause of § 13132, Plaintiff's allegations do not plausibly suggest that he was denied a reasonable accommodation.

"The plaintiff has the burden of proving that [a requested] accommodation is reasonable." *Shannon v. Postmaster Gen. of U.S. Postal Serv.*, 335 F. App'x 21, 25 (11th Cir. 2009). "A qualified individual with a disability is not entitled to the accommodation of his choice, but only to a reasonable accommodation." *Id.* (citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F. 3d 1278, 1285–86 (11th Cir. 1997); *see Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (a

reasonable accommodation must be effective and provide the plaintiff with meaningful access to the benefit or service he seeks, but "need not be perfect or the one most strongly preferred by the plaintiff"). "The ADA's 'reasonable modification' principle" only requires a public entity "to make 'reasonable modifications' that would not fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll*, 480 F.3d at 1082 (citing *Tennessee v. Lane*, 541 U.S. 509, 531–32 (2004)). In the prison context, whether accommodations are reasonable must be judged "in light of the overall institutional requirements." *Love v. Westville Corr. Ctr.,* 103 F.3d 558, 561 (7th Cir. 1996). "Security concerns, safety concerns, and administrative exigencies would all be important considerations to take into account." *Id.*

The "reasonable accommodation" Plaintiff requests is transfer from the FDOC to at a hospital-like residential mental health treatment facility to serve the remainder of his life sentence. While transfer could be an accommodation in the loosest sense, surely it is not a reasonable one. The Court cannot conceive of how it could be argued that it is reasonable to expect the FDOC simply to release Plaintiff from custody and send him to a hospital-like residential mental health treatment facility. State hospitals and treatment facilities are not extensions of the FDOC.  For obvious reasons

the FDOC cannot carry out its function of maintaining custody of an inmate in a secured setting by sending convicted inmates, who may have mental health issues, to residential treatment facilities to serve the remainder of their sentences.

Alternatively, to the extent Plaintiff's reasonable accommodation claim is premised upon the FDOC's inadequate mental health treatment within the institution, the ADA does not create a federal cause of action for prisoners challenging medical treatment for their underlying disabilities unless the alleged inadequate treatment prevented the prisoner from accessing other services within the prison. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)) (noting that inadequate medical treatment is not, without more, an ADA violation); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (finding that "purely medical decisions" do not ordinarily fall within the scope of the ADA); *Ganstine v. Buss*, No. 4:11cv88-RH/WCS, 2011 WL 6780956, at *4 (N.D. Fla. Dec. 27, 2011) (delay in providing inmate with a continuous positive airway pressure device, soft shoes, and a wheelchair was not an ADA violation where nothing suggested the temporary denial of these items prevented the inmate from accessing other services within the prison).

Plaintiff does not suggest that the allegedly inadequate mental health treatment somehow prevented him from accessing any other services, programs, or activities within the FDOC. Instead, without any specificity he makes the conclusory allegation that he has been denied meaningful access to services, programs, and activities in prison. This falls well short of satisfying the *Twombly* pleading standard. Plaintiff's ADA claim should therefore be dismissed.

### 2.    Eighth Amendment Claim

As an initial matter, Plaintiff's Eighth Amendment claim for damages against the Secretary in her *official* capacity is barred by the Eleventh Amendment. A suit against a state official in his official capacity is a suit against the State itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). It is well established that the Eleventh Amendment prohibits a suit against the State absent the State's consent to the suit. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Florida has not waived its sovereign immunity or consented to be sued in damage suits brought under § 1983. *See* § 768.28(18), Fla. Stat.; *Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1515 (11th Cir. 1986). Accordingly, Plaintiff's Eighth Amendment claim against the Secretary in her official capacity is due to be dismissed.

Plaintiff's claim for damages against the Secretary in her *individual* capacity is also barred by the PLRA. Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act as defined in section 2246 of title 18." 42 U.S.C. § 1997e(e). "[T]he physical injury must be more than de minimis, but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated*, 197 F.3d 1059, *reinstated in relevant part*, 216 F.3d 970, 972 (11th Cir. 2000).

In the Eleventh Circuit, "[t]he meaning of the phrase 'greater than de minimis,' however, is far from clear." *Chatham v. Adcock*, 334 F. App'x 281, 284 (11th Cir. 2009); *see Thompson v. Sec'y, Fla. Dep't of Corr.*, 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (noting that the Eleventh Circuit has not adopted a definition of "de minimis," but acknowledging "one court has described it as 'a physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional'") (quoting *Luong v. Hatt*, 979 F. Supp. 481 (N.D. Tex. 1997); *compare Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (plaintiff's claims for compensatory and punitive damages were barred by § 1997e(e) where plaintiff complained of vague injuries to his back and scrapes and marks on

his knees and legs), *and Quinlan v. Personal Trans. Servs., Co.*, 329 F.

App'x 246, 249 (11th Cir. 2009) (pretrial detainee's complaints of

headaches, difficulty breathing, temporary chest pain, and lingering back

pain were not greater than de minimis injuries), *with Jenkins v. Hutcheson*,

No. 6:14-cv-81, 2016 WL 4496561, at \*13 (June 22, 2016), *report and

recommendation adopted*, 2016 WL 4491850, at \*1–2 (S.D. Ga. Aug. 25,

2016) (denying summary judgment on plaintiff's excessive force claim

where plaintiff said he suffered lacerations, bruising, swelling, migraines,

and numbness in his hands because a reasonable jury could find the

injuries to be more than de minimis), *and Cotney v. Bowers*, No. 2:03-cv-

1181-WKW, 2006 WL 2772775, at \*7 (M.D. Ala. Sept. 26, 2006) (plaintiff's

testimony that he suffered bruises to his ribs from officer's use of force and

that the bruises healed after several weeks without treatment surmounted

PLRA's de minimis injury bar because plaintiff put forth evidence from

which a jury could determine his physical injuries were more than de

minimis). Discomfort does not equate to physical injury. *Dixon v. Toole*,

225 F. App'x 797, 799 (11th Cir. 2007).

Conspicuously absent from Plaintiff's complaint is any allegation that

he suffered a physical injury or sexual assault. Rather, Plaintiff's claimed

damages are limited to the psychological effect upon him as a result of his

fear that he will be assaulted, raped, or killed. Such fears without more, fall well short of satisfying the requirements under the PLRA for bringing claims for compensatory or punitive damages. This limitation was included in the PLRA for good reason. Incarceration in a prison by its very nature can have a negative psychological effect on prisoners. Because of the reality that being in prison may itself cause mental anguish and suffering to some degree it would be virtually impossible, without requiring physical injury, to establish and separate mental anguish caused by incarceration in general in a prison from mental anguish that may be caused by the conduct of prison officials.

Furthermore, although Plaintiff claims he was not provided with medication for sixty-eight days and was not evaluated by a mental health provider, Plaintiff does not allege that he suffered any type of physical injury as a result of not having his medication or as a result of not seeing a mental health provider.[2] Plaintiff's claim for compensatory and punitive

---

[2] Although Plaintiff claims in his response to the Secretary's motion to dismiss that his mental health issues cause a "constant strain on [his] heart," and cause him to "def[e]cate blood," Plaintiff does not allege that these issues were the result of not being provided with medication for sixty-eight days or because he was—at some point—not evaluated by a mental health provider. (ECF No. 32 at 8–9.) Notably, none of these allegations are included in his Complaint. While a court is required to read a *pro se* plaintiff's complaint liberally, in ruling on a motion to dismiss, the Court must limit "review to the four corners of the complaint." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Nevertheless, even if Plaintiff had included these allegations in the Complaint, Plaintiff has not stated a plausible Eighth Amendment claim against the

damages should therefore be dismissed.

Even where a prisoner fails to allege a basis for compensatory damages a prisoner may nonetheless seek nominal damages if he is able to establish an Eighth Amendment claim. Plaintiff, however, cannot do so because he has failed to state a plausible Eighth Amendment claim against the Secretary.

The Eighth Amendment governs conditions of confinement in prison. *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). Prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) Harsh and unusual conditions of confinement can deprive a prisoner of his rights under the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). However, "[a]fter incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment prohibited by the Eighth Amendment." *Farrow*, 320 F.3d at 1242 (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)).

In order to state a cognizable Eighth Amendment deliberate indifference claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is

---

Secretary. *See infra.*
Case No: 4:17-cv-186-RH-GRJ

only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 105. In the Eleventh Circuit, "[d]eliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin*, 738 F.3d at 1250 (quoting *Goodman v. Kimbrough*, 718 F.3d 1325, 1331–32 (11th Cir. 2013)). Demonstrating that a prison official disregarded a serious risk of substantial harm entails a showing of something more than gross negligence, but can be shown by something less than actions undertaken with an intent to cause harm. *Farmer*, 511 U.S. at 835.

Incidents of negligence or medical malpractice, however, do not rise to the level of a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991); *Estelle*, 429 U.S. at 105–06 (neither "inadvertent failure to provide adequate medical care" nor "negligen[ce] in diagnosing or treating a medical condition" amounts to deliberate indifference to a serious medical need). Where the inmate has received medical treatment, and the dispute is over the adequacy of the treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments made. *Harris*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1305 (11th Cir. 1989)); *Hamm v. DeKalb Cty.*, 744 F.2d 1567,

1575 (11th Cir. 1985). A difference in medical opinion as to either an inmate's diagnosis or course of treatment does not rise to the level of cruel and unusual punishment. *Harris*, 941 F.2d at 1505.

Section 1983, however, does not create vicarious or respondeat superior liability for the wrongdoings of others. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that supervisory officials cannot be held vicariously liable for the subordinates' actions under § 1983); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.") To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)). Alternatively, the Secretary could be liable under § 1983, if the FDOC had a custom or policy which was 'the moving force behind the constitutional violation.'" *Horn v. Jones*, No. 14-20341-CIV, 2015 WL 3607012, at *8 (S.D. Fla. May 8, 2015) (quoting *Young v. City of Augusta, Ga.*, 59 F.3d

1160, 1171 (11th Cir. 1995)). "[A] longstanding and widespread practice is deemed authorized by the policymaking officials because they must have known about it but failed to stop it." *Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1278 (S.D. Fla. 2012) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)).

Plaintiff has not stated a plausible Eighth Amendment claim against the Secretary because nothing in Plaintiff's complaint suggests that the Secretary actually participated in or was causally connected to the alleged constitutional violations.  Although Plaintiff says he was denied medication for sixty-eight days, denied treatment by a mental health provider, improperly placed on lock down, and that his request for transfer to a hospital-like residential treatment facility was denied, Plaintiff does not allege or suggest in any way that the Secretary was involved in or that her actions or inaction were causally related to Plaintiff's complaints about his treatment in the FDOC.  The Secretary as a matter of law cannot be held liable for the conduct of prison employees on the basis of respondeat superior or vicarious liability.[3]

---

[3] While a prisoner may be able to state an Eighth Amendment claim for deliberate indifference where medications are intentionally withheld from a prisoner, the prison officer who actually directed staff not to provide the medications would be the responsible person. Plaintiff has not brought any claims against medical staff or correctional officers who were actually involved in not providing him with his

Although Plaintiff attempts to suggest that the Secretary is involved because his grievances were denied, such allegations fail to establish the requisite causal link. Importantly, there are no allegations that the Secretary had actual notice of the grievances or played any part in denying Plaintiff's grievances. *See Zerby v. McNeil*, No. 3:09cv284/LC/MD, 2010 WL 2711658, at *5 (May 14, 2010), *report and recommendation adopted*, 2010 WL 2711469 (N.D. Fla. July 6, 2010) (plaintiff's allegations failed to connect the Secretary of the FDOC to the alleged constitutional violation where there was no suggestion that the Secretary had actual notice of plaintiff's grievance or that the Secretary was otherwise causally connected to the alleged constitutional violation)*; see also Cranford v. Hammock*, No. 1:09-cv-00070-MP-AK, 2010 WL 916031, at *2 (N.D. Fla. Mar. 11, 2010) (dismissing prisoner's claim premised on prison official's failure to investigate and correct the allegations raised in prisoner's grievances because § 1983 liability "cannot be predicated upon a claim that the defendant failed to investigate a grievance or respond in a particular manner . . . or failed to process them effectively . . . or failed to process them timely").

---

medications for 68 days. Even this claim, however, would be limited to nominal damages in the absence of any allegation that Plaintiff suffered physical harm as a result of the failure to provide him with his medications.

To the extent Plaintiff claims that the Secretary maintains a custom or policy of discriminating against inmates with mental health issues, Plaintiff's allegations are conclusory and do not identify the policy or custom Plaintiff says was implemented to discriminate against inmates with mental health issue.  In the complete absence of more, Plaintiff's Eighth Amendment claim against the Secretary should be dismissed.

### 3.   Injunctive Relief

Finally, Plaintiff's claim for injunctive relief fails. The only injunctive relief that Plaintiff requests in his Complaint is transfer to a hospital-like residential mental health treatment facility. As discussed in detail above, the Court lacks authority to order the FDOC to transfer an inmate to residential mental health treatment facility.  Plaintiff's request for injunctive relief should therefore be dismissed.

## V.  CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

1.   Plaintiff's Motion for Preliminary Injunction, ECF No. 24, should be **DENIED**;

2.   Plaintiff's Motion for Preliminary Injunction, ECF No. 26, should be **DENIED**; and

3.    Defendant's Motion to Dismiss, ECF No. 27, should be **GRANTED**.

**IN CHAMBERS** at Gainesville, Florida, this 18th day of May 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**